UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TAMERA C.,<br><br>        Petitioner,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security<br>Administration,[1]<br><br>        Respondent. | Case No. 4:20-CV-00262-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Tamera C.'s Petition for Review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits filed June 3, 2020. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will affirm the decision of the Commissioner and dismiss the Petition.

---

[1] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On November 3, 2016, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on June 24, 2016. The application was denied initially and on reconsideration.

Petitioner's application claims she is unable to work due to: depressive disorder, anxiety, mood disorder, insomnia, significant weight gain, loss of interest in all activities, fear of interacting with others, and suicidal thoughts. (AR 214.) Petitioner holds an associate's degree in interior design and has prior work experience as a medical billing clerk. Petitioner meets the insured status requirements through December 31, 2021. At the time of the alleged onset date, Petitioner was 58 years of age.

A hearing was conducted on February 13, 2019, before Administrative Law Judge (ALJ) Stephen Marchioro. After hearing testimony from Petitioner and a vocational expert, the ALJ issued a decision finding Petitioner not disabled on March 15, 2019. (AR 20-33.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## ISSUES PRESENTED

1)   Whether the ALJ properly evaluated Petitioner's symptom statements and the lay witness evidence.

2)   Whether the ALJ properly considered the medical opinion evidence.

3)   Whether the ALJ's RFC determination is supported by substantial evidence.

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## THE ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since June 24, 2016, the alleged onset date. (AR 22.) At step two, the ALJ determined Petitioner had the following severe mental impairments: major depressive disorder, and anxiety with agoraphobia. (AR 23.) The ALJ recognized other physical impairments in the record – clinical obesity and hypertension - but concluded the conditions were nonsevere. (AR 23.)[2]

At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 23-24.) The ALJ next assessed Petitioner's residual functional capacity ("RFC") and determined she could perform a full range of work at all exertional levels with some nonexertional limitations. (AR 24.)

At step four, the ALJ found Petitioner unable to perform past relevant work. (AR

---

[2] Notably, Petitioner acknowledged during the hearing that she alleges disability based on only mental health issues. (AR 23.)

31.) At step five, the ALJ found that, considering Petitioner's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including laundry worker, warehouse worker, and dishwasher. (AR 32.) Thus, the ALJ determined Petitioner was not disabled.

## DISCUSSION

**1.    Petitioner's Symptom Statements and the Lay Witness Evidence.**

Petitioner argues the ALJ erred by failing to properly credit her subjective symptom statements and the lay evidence presented by Hollie Holyoak. (Dkt. 19, 22.) Respondent maintains the ALJ reasonably discounted Petitioner's symptom statements and properly considered the lay evidence. (Dkt 21.)

### A.    The ALJ Properly Evaluated Petitioner's Symptom Statements.

#### i.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id*. (quoting *Garrison*, 759 F.3d at 1014-15); 20 C.F.R. § 404.1529. If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.*

It is "not sufficient for the ALJ to make only general findings; [the ALJ] must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Further, the ALJ must consider all of the evidence in the record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* SSR 16-3p. The standard is whether there is substantial evidence to support the ALJ's conclusion. *Trevizo*, 871 F.3d at 674.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are sound. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

## ii.   Discussion

In her functional report, Petitioner states she has been unable to leave her home and interact with others outside of her family after suffering an emotional breakdown in

June of 2016. (AR 193-194.) Petitioner reports experiencing severe symptoms of depression and anxiety, including: frequently becoming emotional, problems sleeping, low energy, loss of interested in all activities, and fear of interacting with others. However, Petitioner states she is able to attend to all of her personal care needs and perform daily activities including: preparing meals, doing the dishes, cleaning house, and watching television. Petitioner reports fear and anxiety about leaving her residence and running into people she knows, but states she can drive and goes grocery shopping once a month.

During the hearing, Petitioner testified that she is limited in her ability to work due to her fear and anxiety over failing to perform on the job, leaving her home, and being around people. (AR 56-58.) Petitioner stated she avoids social activities outside of her family because it causes her to become emotional, anxious, and overwhelmed.

After accurately and thoroughly discussing Petitioner's statements and testimony, the ALJ found Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 25-26.) The ALJ discredited Petitioner's subjective symptom statements for a number of reasons, including: 1) the lack of treatment; 2) the medical evidence did not correspond with the alleged severity of Petitioner's limitations; and 3) the Petitioner's inconsistent reports regarding the severity of her symptoms. (AR 26-31.)

Petitioner challenges the ALJ's evaluation of her symptom statements, arguing the

ALJ failed to consider: 1) the record as a whole and instead improperly relied on isolated records of benign mental health examination findings; 2) the fact that she suffers from agoraphobia and her symptoms are well controlled only so long as she remains in her home; and 3) that her symptoms wax and wane. (Dkt. 19, 22.) For the reasons that follow, the Court finds the ALJ provided clear, convincing, and specific reasons for rejecting Petitioner's symptom statements. *Trevizo*, 871 F.3d at 678.

First, the ALJ properly considered Petitioner's lack of treatment in evaluating her symptom statements. *See* SSR 16-3p (appropriate for ALJ to assess records of medications, treatments and methods used to alleviate symptoms as well as medical source opinions and reports regarding a claimant's treatment and responses to treatment); SSR 85-16 ("[I]n determining the impact of a mental disorder on an individual's capacities…medical and nonmedical information is considered," as reports from mental health professionals often contain the individual's treatment prescribed and response.). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment,…an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he [or she] cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The ALJ must consider possible reasons a petitioner provides for not complying with treatment or seeking treatment consistent with the degree of his or her complaints. *See* SSR 16-3p. Inability to afford treatment or access low cost medical services can be a legitimate reason for not seeking

medical treatment. *See* SSR 16-3p; *Trevizo*, 871 F.3d at 681; *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

Here, the ALJ observed that Petitioner's mental health conditions were well controlled with medications and she had a long and sustained work history prior to the alleged onset date. (AR 340, 345.) Following the alleged onset date, Petitioner went months between seeking treatment, despite alleging symptoms of depression and anxiety severe enough to preclude her from leaving the house and returning to work. (AR 336.) Notably, Petitioner was able to leave her home to attend mental health treatment sessions with three providers, as well as attend other medical appointments.

During the mental health treatment she did obtain, Petitioner reported improvement of her symptoms, albeit with some symptoms persisting. (AR 336, 348.) However, Petitioner did not return to any of the treatment providers a second time and did not follow up on referrals for further treatment, despite her acknowledgement during her testimony before the ALJ that mental health treatment could have been effective. (AR 27.) The ALJ considered Petitioner's financial concerns during his evaluation of the treatment history and reasonably concluded that Petitioner could have pursued more comprehensive treatment had she chosen to do so. (AR 27, 52-55) (noting Petitioner's testimony that she had health insurance through her husband's employment, her concern about paying the high deductible, and her regret about not obtaining treatment).

Based on the foregoing, the Court finds substantial evidence supports the ALJ's conclusion that Petitioner's failure to pursue treatment is inconsistent with the alleged severity of her mental impairments. Particularly given Petitioner's documented

improvement with treatment, and her concessions that treatment was available and could have been beneficial. The ALJ therefore did not err in considering the lack of treatment as one basis for discrediting Petitioner's symptom statements. Notably, the lack of treatment was just one of the bases relied upon by the ALJ.

Next, the ALJ thoroughly reviewed the record and determined that the examination findings, objective medical evidence, and other records did not correspond with the alleged severity of Petitioner's symptoms. (AR 24-31.) The ALJ also identified specific medical records noting that Petitioner self-reported to her treatment providers that her symptoms had improved since the alleged onset date, contrary to her symptom statements and testimony, and that she had denied having panic attacks. (AR 336, 344, 348, 386.) The ALJ discussed medical evidence establishing that Petitioner's symptoms were mostly mild to moderate, and that Petitioner could experience improvement over time with medication management and counseling. (AR 26-31, 344-345.) Further, the ALJ discussed records showing Petitioner attends to her own personal care and hygiene, retains the ability to function in her activities of daily living, including attending medical appointments outside the home, and that her general appearance during medical exams was found to be appropriate by her treatment providers.

Based on the foregoing, the Court finds the ALJ identified specific evidence in the record that is inconsistent with Petitioner's statements regarding the intensity, persistence, and limiting effects of her symptoms. The ALJ reasonably determined that Petitioner's statements describing the severity of her symptoms are not supported by the record, particularly when considering the records reflecting improvement in Petitioner's

symptoms and the quality of Petitioner's daily activities.

Contrary to Petitioner's argument, the ALJ considered the entire record as a whole when evaluating Petitioner's symptom statements – including her agoraphobia and social anxiety. (AR 27-31.) The ALJ's decision thoroughly discusses the records related to Petitioner's ability to leave the house and her avoidance of social interactions. (AR 27-31.) While the record demonstrates Petitioner has functional limitations, most significantly her ability to interact with others outside the home, the ALJ identified specific and substantial evidence supporting his conclusion that Petitioner's mental impairments do not cause limitations at the level of severity as alleged by Petitioner.

The Court must uphold the ALJ's rational interpretation of conflicting evidence in the context of evaluating a claimant's subjective testimony. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."). Although Petitioner disagrees with the ALJ and points to other records that she argues reflect otherwise, the ALJ has accurately identified substantial evidence in the record to support his evaluation of Petitioner's symptom statements. The Court will not second-guess the ALJ's reasonable interpretation of the claimant's testimony where it is supported by substantial evidence in the record. *Rollins*, 261 F.3d at 857. Accordingly, the Court finds the ALJ properly evaluated Petitioner's symptom statements.

**MEMORANDUM DECISION AND ORDER - 11**

### B.      The ALJ Properly Evaluated the Lay Witness Evidence

Ms. Holyoak submitted a letter in support of Petitioner's application dated September 7, 2017. (AR 267-268.) In her letter, Ms. Holyoak states she has known Petitioner since 2008 as a friend and coworker.[3] Ms. Holyoak describes her observations of Petitioner's depression over the last few years, stating Petitioner became more closed off to others, began having attendance problems at work, had a change in physical appearance, and was unable to get out of bed.

After accurately summarizing Ms. Holyoak's letter, the ALJ found Ms. Holyoak's account of Petitioner's "heightened anxiety in social situations outside the home is reasonably well supported" by the record, but that her opinion "otherwise warrant[s] nominal weight." (AR 31.) The ALJ concluded that the evidence in the record supported no more than mild to moderate limitations due to depression and overall mental functioning, aside from the marked limitations with regard to social interaction, as reflected by the limitations assessed in the RFC.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill*, 12 F.3d at 919; 20 C.F.R. § 404.1513(d) (effective prior to March 27, 2017). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore cannot be disregarded without comment." *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the

---

[3] The ALJ's decision correctly notes that Ms. Holyoak is a nurse at Mountain View Family Medicine, the clinic where Petitioner was last employed. (AR 30, 380.)

**MEMORANDUM DECISION AND ORDER - 12**

testimony of lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of the claimant, the ALJ may cite the same reasons given for rejecting the claimant's statement. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming the ALJ's rejection of a family member's testimony, which was similar to the claimant's, based on the same reasons given for rejecting the claimant's complaints).

Here, the ALJ provided germane reasons for assigning "nominal weight" to Ms. Holyoak's letter – namely that her statements concerning the severity of Petitioner's limitations were not supported by the record. (AR 31.) Ms. Holyoak's letter is similar in nature to Petitioner's statements regarding her anxiety with social interactions outside the home. The ALJ therefore could rely on the same reasons used to reject Petitioner's statements, to discount Ms. Holyoak's letter. *See Valentine*, 574 F.3d at 694. As previously discussed, the ALJ articulated specific and clear reasons for rejecting Petitioner's symptom statements and testimony. Namely, that the statements are not supported by evidence in the record. Accordingly, the ALJ appropriately discounted Ms. Holyoak's statements for the same reasons. *Id.*

Petitioner contends the ALJ erred in evaluating Ms. Holyoak's letter, and by extension Petitioner's own symptom statements, by "completely ignor[ing]" her agoraphobia and because the ALJ did not provide germane reasons for discounting the statements. (Dkt. 22.) As previously explained, the ALJ considered the records relating to Petitioner's agoraphobia throughout the written decision. (AR 26-31.) The ALJ

recognized that Petitioner's agoraphobia and social anxiety outside the home were reasonably well supported, but found that the evidence regarding Petitioner's depression and overall mental functioning supported no more than mild to moderate limitations as assessed in the RFC. (AR 31.)

Petitioner's argument here essentially disagrees with the ALJ's view of the record and the RFC assessment. However, Petitioner has not shown error in the ALJ's primary finding that the lay witness's statement is not supported by the overall evidence in the record. Thus, Petitioner has failed to show harmful legal error in the ALJ's consideration of the lay evidence. *Lewis*, 236 F.3d at 511 (9th Cir. 2001) (ALJ may discount lay testimony that conflicts with medical evidence.).

## 2.    The ALJ Properly Considered the Medical Opinion Evidence

Petitioner argues the ALJ erred in evaluating the medical opinions of John L. Christensen, Ph.D., and Bradley M. Burton, M.D. (Dkt. 19, 22.) Respondent disagrees, asserting the ALJ properly considered the opinion evidence. (Dkt. 21.)

### A.    Legal Standard

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at 1012.

In evaluating medical opinions, the ALJ must consider: 1) whether the source examined the claimant; 2) the length, frequency, nature, and extent of any treatment relationship; 3) the degree of support the opinion has, particularly from objective medical evidence; 4) the consistency of the opinion with the record as a whole; 5) the source's specialization; and 6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675; *Orn*, 495 F.3d at 631-32; *Revels*, 874 F.3d at 665.[4]

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ errs by rejecting "a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his or her]

---

[4] The regulations governing the evaluation of medical evidence were amended for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Petitioner's claim was filed on November 3, 2016, the Court applies the case law and regulations effective prior to the March 27, 2017 amendments. *See* 20 C.F.R. § 404.1527.

conclusion." *Id.* at 1012–13.

### B.    Dr. Christensen's Opinion

Dr. Christensen performed a consultative mental status examination of Petitioner

on February 23, 2017. (AR 340.) Dr. Christensen diagnosed Petitioner with major

depressive disorder and generalized anxiety disorder, concluding:

> The claimant's prognosis is guarded to positive. She reports a long history
> of being functional, despite experiencing symptoms of depressed mood and
> anxiety throughout her adulthood. She is prescribed medication to treat her
> combination of complaints which has been somewhat helpful; however, she
> has been unable to return to the work force. She would likely benefit from
> outpatient psychotherapy in order to assist her in developing skills to better
> manage stress and address depressed mood.

Dr. Christensen summarized his findings and opinion stating:

> At present, the claimant presents with significant functional impairment
> associated with emotional complaints. I would anticipate that, due to the
> severity of her emotional issues, she would have difficulty processing
> complex information. She becomes easily overwhelmed and emotional. She
> should be able to process simple information fairly well. Sustained
> concentration would also be impaired secondary to emotional complaints.
> She does not appear to have focal ADHD; however, due to emotionality,
> she may have difficulty concentrating and persisting to task completion.
> Social interactions with others are also impaired, and she often does not
> have significant contact with individuals outside of her family. She reports
> that she avoids going out at times due to not wanting to see others. Her
> emotional complaints would also have some impact on adaptability, as
> individuals with significant depression and anxiety can approach problem
> solving in a rigid manner.
>
> I do note that the claimant has been very functional in the past, holding
> multiple long-term employment positions. With medication management
> and counseling, I would be hopeful that she could experience improvement
> over time.

(AR 344-345.)

The ALJ afforded Dr. Christensen's opinion "some considerable weight" in

**MEMORANDUM DECISION AND ORDER - 16**

assessing Petitioner's functional limitations. (AR 28.) For the reasons that follow, the Court finds the ALJ's evaluation of Dr. Christensen's opinion is supported by substantial evidence.

The ALJ gave a complete and detailed summary of Dr. Christensen's findings and opinion, and explained the basis for assigning considerable weight to Dr. Christensen's evaluation. (AR 27-28.) In making his findings, the ALJ stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. (AR 24.) The ALJ acknowledged that Dr. Christensen's evaluation was a one-time consultative psychological examination. (AR 27-28); 20 C.F.R. § 404.1527(c). Greater weight is due to the "opinion of a specialist about medical issues related to his or her area of specialty," such as Dr. Christensen who is a licensed psychologist. 20 C.F.R. § 404.1527(c)(5); *Revels*, 874 F.3d at 654; (AR 30) (distinguishing Dr. Burton's overall conclusions from the records of the examining mental health professionals).

The ALJ concluded that Dr. Christensen's findings were consistent with the objective medical evidence in the record, with the exception of Dr. Burton's opinion and Ms. Holyoak's statement which the ALJ discredited. (AR 26-31.) As explained more fully below, the ALJ articulated specific and legitimate reasons that are supported by substantial evidence for assigning controlling weight to Dr. Christensen's findings and opinion over that of Dr. Burton and other evidence in the record.

Petitioner argues the ALJ mischaracterized Dr. Christensen's opinion and failed to reconcile the "significant functional limitations" found by Dr. Christensen with the RFC determination. (Dkt. 19, 22.) Further, Petitioner contends the ALJ erred in concluding

that Dr. Christensen's findings were inconsistent with Dr. Burton's opinion, Petitioner's subjective statements, and Ms. Holyoak's letter. (Dkt. 19 at 19-20.) The Court finds otherwise.

The ALJ did not mischaracterize Dr. Christensen's opinion. The ALJ accurately summarized Dr. Christensen's evaluation, particularly with regard to Petitioner's emotional issues. (AR 28.) Indeed, the ALJ's decision recited the very findings, almost verbatim, that Petitioner identifies in her briefing as being mischaracterized. *Compare* (AR 28); (Dkt. 19 at 10-11); (Dkt. 22 at 2.) Further, the ALJ expressly relied on Dr. Christensen's findings and opinions making the RFC determination, which is supported by substantial evidence. (AR 28.)

Petitioner simply disagrees with the ALJ's assessment of Petitioner's functional limitations in the RFC. Namely, that the RFC limitations are insufficient to adequately address Petitioner's mental impairments stemming from her emotional issues. Contrary to Petitioner's argument, however, the ALJ reasonably concluded that Dr. Christensen's evaluation of Petitioner's functional limitations conflicts with the marked and extreme limitations assigned by Dr. Burton and with Ms. Holyoak's observations.

While Dr. Christensen concluded that Petitioner's presents with a "significant functional impairment associated with emotional complaints," Dr. Christensen did not find that all of Petitioner's limitations were as severe as she claims or as reported by Dr. Burton and Ms. Holyoak. As the ALJ recognized, Dr. Christensen found Petitioner had marked limitations associated with social interactions. (AR 28-29.) Dr. Christensen observed that certain of Petitioner's functions would be impaired by her emotional

complaints – namely, processing complex information, sustained concentration, difficulty concentrating and persisting to task completion, social interactions, and adaptability. (AR 344.) However, Dr. Christensen concluded that Petitioner's abilities in other functional domains were no more than mild to moderately limited, specifically: abstract thinking, complex reasoning, attention and concentration, remote memory, general fund of information, judgment and social comprehension, reasoning, and processing simple information. (AR 342-345.)

The ALJ assessed RFC limitations consistent with Dr. Christensen's evaluation, limiting Petitioner to simple, routine tasks; occasional changes in a routine work setting; never interacting with the public; and occasionally interacting with coworkers and supervisors. (AR 24.) In doing so, the ALJ explained the bases for his assessment of Petitioner's limitations, which is supported by substantial evidence. *See Revels*, 874 F.3d at 654 (The ALJ must set out "a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (the agency must set forth the reasoning behind its decisions in a way that allows for meaningful review.).

The ALJ recognized that Dr. Christensen's evaluation elicited no more than mild difficulties with memory, general fund of information, understanding, and applying information, and that Petitioner did not have difficulty with complex reasoning. (AR 27-28.) The ALJ assessed mild limitations in adapting or managing oneself based on Petitioner's own acknowledged abilities regarding her activities of daily living. (AR 28.)

The ALJ assessed moderate limitations with regard to concentration, persisting, or maintaining pace consistent with Dr. Christensen's finding that Petitioner may have difficulty with such tasks. (AR 28.) Critically, the ALJ explained that he assessed marked limitations in interacting with others and considerable social limitations in the RFC based on Dr. Christensen's findings and opinion in conjunction with Petitioner's consistent focus on her difficulty interacting with others outside the home. (AR 28-29.)

Based on the foregoing, the Court finds the ALJ's evaluation of Dr. Christensen's opinion is supported by substantial evidence. Petitioner's disagreement with the ALJ's conclusion does not warrant remand. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) ("[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.").

### C.    Dr. Burton's Opinion

Dr. Burton was Petitioner's previous employer for several years and occasionally a treating provider. On May 31, 2017, Dr. Burton completed a mental capacity assessment checkbox form. (AR 375-377.) Dr. Burton assigned marked limitations to Petitioner's ability to problem solve; initiate and perform a task and work at an appropriate and timely pace; make plans independently of others; maintain personal hygiene and attire appropriate to a work setting; and cooperate with others.

Dr. Burton found Petitioner has extreme limitations in several areas, including the ability to: use reason and judgment to make work related decisions; avoid distractions while working; work close to or with others; sustain an ordinary routine and regular

attendance a work; work a full day without exceeding the allotted amount of rest; adapt to changes; manage psychologically based symptoms; set realistic goals; handle conflicts with others; respond to requests, suggestions, and criticism; and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (AR 375-377.)

Dr. Burton also completed a progress report dated September 12, 2017, documenting a home visit among Dr. Burton, Ms. Holyoak, and Petitioner. (AR 380.) During the home visit, Petitioner reported "sleeping a little bit better and things have stabilized somewhat," but that she "still has incapacitating anxiety upon leaving the home" and "is unable to be in public without significant panic and anxiety which leads to worsening depression." (AR 380.) Dr. Burton noted that Petitioner denied any suicidal thoughts or ideation, and that Petitioner appeared: "alert and well-groomed and in no apparent distress. She was appropriate and did not become tearful during our interview." (AR 380.) Dr. Burton diagnosed Petitioner with depression and anxiety with agoraphobia. He also concluded that Petitioner's current medications were maximized and suggested psychiatric referral for consultation to address her agoraphobia.

Finally, Dr. Burton saw Petitioner in his office on January 30, 2019. (AR 394.) Dr. Burton reported that Petitioner had seen three different psychiatric counselors, but that she continued to have significant agoraphobia, depression, and anxiety. Dr. Burton characterized Petitioner's agoraphobia as "incapacitating," rendering her unable to leave her home at times. Dr Burton reported that Petitioner agreed to continue with the same medications but that she did not desire to pursue further counseling. (AR 394.)

**MEMORANDUM DECISION AND ORDER - 21**

Relatedly, Dr. Burton wrote a letter in support of Petitioner's disability application dated January 31, 2019. (AR 392.) In his letter, Dr. Burton states Petitioner has suffered with depression and anxiety for some time, and developed significant agoraphobia two years ago. Dr. Burton opines that Petitioner has been unable to overcome her agoraphobia despite treatment and has "shut herself off from her friends and family and spends [a] majority of her time at home and sleeps most of the day." (AR 392.)

The ALJ concluded that there was "little medical support" for Dr. Burton's opinions, aside from his finding that Petitioner has marked limitations interacting with others. (AR 29.) The ALJ found:

> [T]he overall conclusions of Dr. Burton tend to describe the claimant's symptomology as significantly greater in severity than as reflected in other treating and/or examining records, particularly those from mental health professionals. As such, significantly less weight has been given to portions of his opinions. Nevertheless, the undersigned does give some significant weight to his opinion/assessment regarding the claimant's difficulty interacting with others, thereby assessing up to marked limitations in this domain of functioning and assessing considerable social limitations accordingly.

(AR 30.)

Thus, the ALJ adopted Dr. Burton's opinions regarding Petitioner's difficulty interacting with others, but rejected the portions of Dr. Burton's opinions related to Petitioner's other limitations. In doing so, the ALJ articulated specific and legitimate reasons for discrediting portions of Dr. Burton's opinions.

First, the ALJ concluded that the discredited portions of Dr. Burton's opinions conflict with other evidence in the record, most notably Dr. Christensen's independent clinical findings. *See Orn*, 495 F.3d at 632 ("[W]hen an examining physician provides

'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"); *Morgan*, 169 F.3d at 601 ("Where medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner].'"). Next, the ALJ evaluated the quality of Dr. Burton's findings and the consistency of the opinions with the record as a whole. *Orn*, 495 F.3d at 631 (Where the treating physician's opinion is contradicted by substantial evidence, it is no longer entitled to controlling weight and the ALJ must consider the factors listed in § 404.1527(c) in determining what weight to accord the opinion of the treating physician.).

Petitioner challenges the ALJ's evaluation of Dr. Burton's opinions, arguing the ALJ erred in concluding that Dr. Burton's findings are inconsistent with the opinion of Dr. Christensen and other evidence in the record. (Dkt. 19 at 22.) Indeed, Petitioner maintains that Dr. Burton's evaluation of Petitioner's functional limitations is consistent with Dr. Christensen's opinion and the other medical evidence. The Court disagrees. For the reasons that follow, the Court finds the ALJ's evaluation of Dr. Burton's opinions was reasonable and based on substantial evidence.

As previously discussed, the ALJ did not err in concluding that portions of Dr. Christensen's and Dr. Burton's opinions conflict. Dr. Burton opined that nearly all of Petitioner's abilities in the four mental capacity domains were either markedly or extremely limited. (AR 375-377.) In contrast, a careful reading of Dr. Christensen's entire report reveals that Dr. Christensen did not find Petitioner to be significantly impaired in all functional domains, as Petitioner argues here. Nor did Dr. Christensen

find that Petitioner's impairments caused the many marked and extreme limitations assigned by Dr. Burton.

Rather, Dr. Christensen found Petitioner had significant functional impairments associated with emotional complaints that most notably impacted her ability to process complex information and interact with others socially, comparable to Dr. Burton's opinions. (AR 344-345.) However, Dr. Christensen's findings diverge from Dr. Burton's opinions with regard to the level of severity of Petitioner's other functional limitations. Specifically, Dr. Christensen found that Petitioner could process simple information fairly well; her attention and concentration are approximately within normal limits; her remote memory was intact but had some mild difficulty with other memory tasks; she had only mild difficulty with general fund of information; she was able to complete simple math; abstract thinking was somewhat concreate; she did not have difficulty with complex reasoning; judgment and social comprehension appeared appropriate; and she had only mild variability in attention and concentration secondary to emotional complaints. (AR 342-344.)

Having concluded that the majority of Dr. Burton's opinions were contradicted by Dr. Christensen's evaluation, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Burton's opinions. *See Orn*, 495 F.3d at 632; *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. However, "[t]he ALJ must do more than offer his [or her] conclusions. [The ALJ] must set forth his [or her] own interpretations

and explain why they, rather than the doctors', are correct." *Id.* The ALJ has done so here.

In his decision, the ALJ evaluated the quality of Dr. Burton's findings that Petitioner had extreme and marked level impairments as reflected on the mental capacity assessment. The ALJ noted Dr. Burton's findings were contained on a preprinted, checkbox form. (AR 29.) The ALJ observed that the form offered little explanation for Dr. Burton's findings except for two short comments stating: 1) Petitioner had "underlying recurrent depression and agoraphobia with panic that has been incapacitating," and 2) Petitioner could not manage benefits in her own best interests because she has "difficulty concentrating and impulsive buying." (AR 29, 377.) The ALJ did not error in considering the conclusory mental capacity assessment as one basis for discrediting a portion of Dr. Burton's opinion.

The mental capacity assessment form provides almost no explanation for the marked and extreme limitations found by Dr. Burton. While the checkbox format of the mental capacity assessment form alone is not sufficient to discredit a treating physician's opinion, it was reasonable for the ALJ to consider the cursory nature of the form, in conjunction with the other factors relevant to evaluating the medical opinion evidence, when weighing Dr. Burton's opinions.

Critically, the ALJ also determined that other medical evidence in the record was inconsistent with Dr. Burton's opinions that Petitioner's mental impairments caused extreme and marked limitations, aside from her difficulties interacting with others. (AR 29-30.) The ALJ discussed specific inconsistencies in the record - most notably, Dr.

Christensen's report finding Petitioner had mostly mild to moderate limitations as discussed previously.

Further, the ALJ identified several records reporting Petitioner's appearance and dress were appropriate, consistent with Petitioner's own statements that her symptoms caused no interference with her personal care and hygiene. (AR 29.) This, the ALJ explained, was inconsistent with Dr. Burton's finding that Petitioner had marked difficulties in obtaining personal hygiene and attire appropriate to a work setting and inconsistent with the other medical evidence in the record. (AR 29-30, 376.)

Next, the ALJ discussed a medical record created by Stephanie Clark, APRN, that detailed an in-person office visit with Petitioner in March of 2018, after Dr. Burton's mental health assessment. (AR 385-388.) While acknowledging this was a one-time examination, the ALJ pointed out that Petitioner's visit was specifically related to establishing care for her mental health impairments and related symptoms. As with other records, Ms. Clark also observed that Petitioner's appearance and grooming were neat and clean. (AR 30, 386.) The ALJ emphasized the significant contrast between Ms. Clark's observations during her mental status exam with the opinions offered by Dr. Burton. (AR 30.) The ALJ reasonably concluded that Ms. Clark's mental status exam provides further evidence for assigning limitations of no more than mild difficulties in concentrating, persisting, or pace, and no more than moderate difficulties in understanding, remembering, or applying information. (AR 30, 386-387.)

Having carefully reviewed the record, the Court finds the ALJ articulated specific and legitimate reasons supported by substantial evidence for rejecting portions of Dr.

Burton's opinions. The ALJ identified particular medical records that contradicted Dr. Burton's findings of marked and extreme limitations, and provided a reasonable explanation for assigning more weight to the other records than to the findings of Dr. Burton. Specifically, the ALJ identified records from other treating and examining mental health professionals that support limitations of no more than mild or moderate severity, with the exception of Petitioner's social anxiety. (AR 30.)

Further, it was reasonable for the ALJ to give greater weight to Dr. Christensen's opinions about Petitioner's mental health limitations, given his specialty as a licensed psychologist. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); (AR 30) (crediting the findings of mental health professionals over that of Dr. Burton). As the ALJ detailed in his decision, Dr. Christensen evaluated Petitioner's sensorium and mental capacity and made independent clinical findings based on various tests as described in his report. (AR 27-28, 343.) In contrast, Dr. Burton's mental capacity assessment and other records offer little explanation of the objective bases supporting the limitations assigned.

Where, as here, an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are themselves substantial evidence. *Orn*, 495 F.3d 625, 632; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Andrews*, 53 F.3d at 1041. Under these circumstances, "it is then solely the province of the ALJ to resolve the conflict" and to decide which medical opinions to credit. *Andrews*, 53 F.3d at 1041; *Morgan*, 169 F.3d at 601.

**MEMORANDUM DECISION AND ORDER - 27**

As discussed previously, the ALJ determined that Dr. Christensen's findings and opinion are consistent with other medical evidence in the record. Conversely, the ALJ identified and discussed medical evidence that contradicts Dr. Burton's opinions. The ALJ, therefore, did not err in affording greater weight to Dr. Christensen's opinion than those of Dr. Burton.

Where substantial evidence in the record contradicts the opinion of the treating physician, the opinion of the treating physician is no longer entitled to controlling weight. *Orn*, 495 F.3d at 632; *see also* 20 C.F.R. § 404.1527(c)(2). In that event, the ALJ must consider the factors listed in § 404.1527(c) to determine what weight to accord the opinion of the treating physician. The factors include the length of the treatment relationship and the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. *Orn*, 495 F.3d at 631. Even when contradicted by the opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96–2p.

Here, the ALJ recognized Dr. Burton's long relationship with Petitioner as both her employer and occasional treating provider. (AR 29-30.) The ALJ recognized that Dr. Burton examined Petitioner on more than one occasion. (AR 29-30) (discussing the records reflecting Dr. Burton's home visit on September 12, 2017 and office visit on January 30, 2019). After thoroughly reviewing the record, the ALJ afforded some significant weight to Dr. Burton's finding concerning Petitioner's social limitations, but gave significantly less weight to the other portions of his opinions. (AR 29-30.)

Petitioner argues that the ALJ misstated the medical opinion evidence, selectively ignored parts of the record that did not support the ALJ's decision, and should have weighed the opinions differently. (Dkt. 19, 22.) Petitioner's contentions essentially ask the Court to weigh the evidence in the record differently from the ALJ's assessment. Petitioner faults the ALJ for failing to give greater weight to the portions of the record that are favorable to her claim.

Contrary to Petitioner's argument, the ALJ identified particular medical evidence in the record that is inconsistent with Dr. Burton's findings and explained his rational for affording greater weight to other evidence in the record in making his determinations. The ALJ did not ignore the materials highlighted by Petitioner. Rather, the ALJ's decision accurately discusses the entire record, including the records Petitioner argues support her claim. The ALJ simply concluded differently from Petitioner in making the disability determination.

Petitioner's disagreement with the ALJ's findings and conclusions does not warrant remand. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (If "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record."), *superseded by regulation on other grounds*; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record.'"). The Court may not second-guess the ALJ's reasonable interpretation of the medical evidence, especially where, as here, the ALJ's explanations are supported by substantial evidence when viewing the record as a

whole.

Even if the record contains some evidence which may support inferences favorable to Petitioner, any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. *See Baston*, 359 F.3d at 1195 ("When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict.") The task of weighing the medical evidence and resolving conflicts among the medical opinions belongs to the ALJ. *Andrews*, 53 F.3d at 1039. So long as the ALJ's decision is rationally supported by the evidence, when examined as a whole, the Court must uphold the ALJ's determination. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## CONCLUSION

Based on the forgoing, the Court finds the ALJ's evaluation of the subjective symptom statements, lay evidence, and medical opinion evidence is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the ALJ did not err in making the RFC assessment. Petitioner has not met her burden of establishing harmful error in support of her request for remand. Therefore, the Commissioner's decision will be affirmed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1)      The Commissioner's decision finding that the Petitioner is not disabled

within the meaning of the Social Security Act is **AFFIRMED**.

2)      The Petition for Review (Dkt. 1) is **DISMISSED**.

DATED: September 22, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge